**SILLS CUMMIS & GROSS P.C.**
S. Jason Teele, Esq.
Gregory A. Kopacz, Esq.
101 Park Avenue, 28th Floor
New York, New York 10178
(212) 643-7000 (Telephone)
(212) 643-6500 (Facsimile)

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE NORTHWEST COMPANY, LLC, *et al.*[1] | Case No. 20-_____ (   ) |
| Debtors. | (Joint Administration Requested) |

## DECLARATION IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS

I, Ross Auerbach, hereby declare under penalty of perjury as follows:

1.      I am the President and Chief Executive Officer of The Northwest Company, LLC and The Northwest.com LLC (each a "**Debtor**," and together, the "**Debtors**"). I am familiar with the day-to-day operations, affairs, and books and records of the Debtors.

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in this Court.

3.      The Debtors are currently operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no request has been made for the appointment of a trustee or examiner.  No official committee of unsecured creditors has been appointed.

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: The Northwest Company, LLC (8132) and The Northwest.com LLC (1339). The location of the Debtors' service address is: 49 Bryant Avenue, Roslyn, New York 11576.

4.      On the date hereof or shortly thereafter, the Debtors intend to file a number of motions and applications (collectively, the "**First Day Motions**") in order to allow the Debtors to operate while under the protection of this Court with minimum disruption or loss of value.  I am familiar with the contents of the First Day Motions, and believe the relief sought in each such motion is necessary to ensure that the value of the Debtors' estates are maximized.

5.      I submit this declaration in support of the First Day Motions pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**") and 28 U.S.C. § 1746 (the "**First Day Declaration**"). Except as otherwise indicated herein, all facts set forth in this First Day Declaration are based on my personal knowledge, information supplied to me by the Debtors and their professionals, were learned from my review of relevant documents or are my opinion based upon my experience and knowledge of the Debtors' operations and financial condition. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I could and would testify competently to the facts set forth herein.

6.      Part I of this Declaration describes the background and business of the Debtors. Part II describes the Debtors' prepetition capital structure and indebtedness.  Part III describes the circumstances leading to the commencement of the chapter 11 cases.  Part IV sets forth the relevant facts in support of each of the First Day Motions. Part V contains statements and additional information about the Debtors, as required by Local Rule 1007-2.

**PART I:**
**BACKGROUND AND BUSINESS OF THE DEBTORS**

2.      The Debtors are a leading manufacturer and seller of branded home textiles and is the number one manufacturer of throws and blankets in the United States.  Pursuant to multi-year license agreements with global entertainment and lifestyle brands and professional sports leagues, the Debtors manufacture and sell bedding products, blankets and throws, pillows, bath products (such as towels, bath mats and bath robes) and accessories (such as backpacks and

duffels).  The Debtors also sells self-branded textiles under the Northwest Originals label. The

Debtors products are sold through major national retailers and on-line channels.

3.      The Debtors operate from their showroom in midtown Manhattan as well as

corporate offices in Roslyn, New York and Bentonville, Arkansas. The Debtors also maintain a

sourcing office in Shanghai, China and operate a state of the art weaving facility in Ronda, North

Carolina.

**PART II:**
**THE DEBTORS' PREPETITION CAPITAL STRUCTURE AND INDEBTEDNESS**

(i)      **CIT Prepetition Factoring Agreement**

4.      As of the Petition Date, Debtor The Northwest Company LLC was party to a

Third Amended and Restated Factoring Agreement dated as of October 23, 2008 (as amended,

modified, or supplemented, the "**Prepetition Factoring Agreement**"), an Amended and

Restated Letter of Credit Agreement dated as of October 23, 2008 (as amended, modified, or

supplemented, the "**Prepetition L/C Agreement**"), and a Second Amended and Restated

Security Agreement dated April 18, 2019 (as amended, modified, or supplemented, the

"**Prepetition Security Agreement**") (collectively, together with all agreements, instruments,

certificates, reports, and other documents executed and delivered pursuant thereto, the

"**Prepetition Factoring Documents**") with CIT Group/Commercial Services, Inc. ("**CIT**"),

pursuant to which, among other things, (i) the Debtors sold and assigned to CIT, and CIT

purchased as absolute owner, the Debtor's accounts arising prior to the commencement of the

Bankruptcy Case (the "**Prepetition Accounts**"), which transactions (the "**Prepetition**

**Assignments**") were valid and true purchases and sales of the Prepetition Accounts, and (ii) CIT

made loans, advances, and other financial accommodations to the Debtor (collectively, the

"**Prepetition Factoring Facility**").

5.      As of the Petition Date, the Debtor was indebted to CIT in the non-contingent

liquidated amount of approximately $19,163,980.60, plus fees, expenses, and other amounts

arising under the Prepetition Factoring Documents, in respect of the Obligations (as defined in

the Prepetition Factoring Agreement, and as so defined, the "**Prepetition Factoring Obligations**").

6. The Prepetition Factoring Obligations are secured by liens and security interests (the "**Prepetition Factoring Liens**") encumbering substantially all assets of the Debtors as set forth in the Prepetition Factoring Documents (the "**Prepetition Collateral**"). The aggregate value of the Petition Collateral exceeds the aggregate amount of the Prepetition Factoring Obligations.

**(ii)    Ashford Promissory Note**

7. Prior to the Petition Date, on or around December 31, 2016, The Northwest Company LLC entered into that certain Promissory Note (the "**Promissory Note**") with Ashford Textiles LLC ("**Ashford**"). The principal amounts of the Promissory Note was $10,000,000. The Promissory Note was initially scheduled to mature on December 31, 2018. However, on or around December 20, 2018, The Northwest Company LLC exercised its right to extend the term of the Promissory Note for an additional two (2) years (*i.e.*, to December 31, 2020).

8. Pursuant to the terms of the Promissory Note, beginning on January 1, 2017, and on the first day of each and every month thereafter during the term of the Promissory Note, The Northwest Company LLC was to make interest only payments to Ashford on the principal amount.

9. The Promissory Note expressly provides that payment of the principal amounts due under the terms of the Promissory Note are subordinated and subject in right of payment to the prior payment in full of obligations owed under the CIT Credit Agreement. The interest only payments owed to Ashford, however, are not subordinated.

10. As of the Petition Date, the balance of the Promissory Note was approximately $10,000,000 under the Promissory Note.

**(iii)    Intercreditor Agreement**

11. As of the Petition Date, CIT and Ashford were parties to an Intercreditor Agreement dated as of August 2, 2019 (as amended, modified, or supplemented, the

"**Intercreditor Agreement**") which, among other things, provides for the relative priority of its respective prepetition liens and security interests in the Prepetition Collateral, with the interests of CIT having priority over the interests of the Ashford.

        **(iv)**    **Unsecured obligations**

12.    As of the Petition Date, the Debtors estimate that they have approximately $57,000,000 in outstanding obligations to trade vendors and other creditors.

        **(v)**    **The Debtors' Equity Interests**

13.    The Northwest Company, LLC is a limited liability company, organized under the laws of North Carolina.  The Northwest Company, LLC is owned: (i) eighty percent (79%) by Northwest Textile Holdings LLC, (ii) twenty percent (20%) by Extreme Horse Limited and (iii) one percent (1%) by Ross Auerbach.  Northwest Textile Holdings LLC is owned: (i) fifty one percent (51%) Ross Auerbach, and (ii) forty nine percent (49%) by Shay Auerbach.

2.    The Northwest.com LLC is a wholly-owned subsidiary of The Northwest Company, LLC, organized under the laws of Delaware.

**PART III:**
**CIRCUMSTANCES LEADING TO THE COMMENCEMENT**
**OF THE CHAPTER 11 CASES**

3.    A series of unfortunate events that started several years ago led to significant liquidity issues in the Debtors' business. In 2017, the Debtors acquired the sports-branded inventory of Concept One, then a leading manufacturer of licensed backpacks and accessories sold primarily through Walmart. Challenges with the acquired inventory were discovered shortly after the transaction closed. The level of profitability of sales through Walmart were far lower than expected by the Debtors during pre-closing diligence due to inaccurate representations by Concept One.

4.    More significant, quality control issues with Concept One products resulted in lost sales opportunities. The Debtors were not able to assimilate the inventory into their core business as they had projected, and sales were far below what was expected. In the meantime, the licenses

associated with the inventory required the Debtors to pay large minimum guarantees to the licensors.  The overall disappointing sales volume of this inventory drained cash flow from the Debtors' core business.

5.      In addition, certain products supplied by Ashford Textiles USA LLC, a key vendor of products to the Debtors, suffered significant quality control issues that caused Walmart to first reduce, then cancel, the Debtors' participation in its juvenile bedding modular program. Such programs are a key source of sales for the Debtors. The loss placed even further strain on the Debtors' liquidity.

6.      Then, in 2018, the U.S. Government imposed a tariff of 25% on bags and backpacks imported from China. This tariff was in addition to the already high 17.6% duty imposed on that category of goods, and decreased both demand for the goods and the margins on their sale.

7.      Finally, the Debtors' overall sales decreased in recent years in the wake of the declines in the retail sector generally.  The current public health crisis, while not the reason for the Debtors' bankruptcy, has exacerbated the Debtors' financial condition.

8.      As a result of these factors, the Debtors took the necessary step of commencing these cases preserve and maximize the value of their assets.

**PART IV:**
**FIRST DAY MOTIONS AND APPLICATIONS**

9.      The Debtors have filed or will file the First Day Motions, seeking various forms of relief designed to maximize the value of their estates for the benefit of creditors and other stakeholders.  I have reviewed each of the First Day Motions and believe that the Debtors have satisfied the applicable standards for the relief requested, and that the Court's grant of the requested relief is in the best interests of the Debtors, their estates, as well as that of their creditors and other parties in interest.  Each of the First Day Motions is summarized below.

10.     **Joint Administration Motion**. The Debtors seek entry of an order directing the joint administration and procedural consolidation of the Debtors' related chapter 11 cases (the "**Joint Administration Motion**"). Specifically, the Debtors request that the Court maintain one file and docket for the Debtors' jointly administered cases under the case of The Northwest Company, LLC and that the cases be administered under a consolidated caption.  Further, the Debtors request that an entry be made on the docket of The Northwest.com LLC's case to reflect the joint administration of these chapter 11 cases.

11.     Many of the motions, hearings, and orders in these chapter 11 cases will affect both Debtors. The entry of an order directing joint administration of these chapter 11 cases will reduce fees and costs by avoiding duplicative filings and objections. Further, joint administration will allow the Office of the United States Trustee for the Southern District of New York and all parties in interest to monitor these chapter 11 cases with greater ease and efficiency.  Parties in interest will not be harmed by the relief requested, but instead, will benefit from the cost reductions associated with the joint administration of these chapter 11 cases.

15.     I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate in the ordinary course without disruptions. Accordingly, on behalf of the Debtors, I respectfully submit that the Court should approve the Joint Administration Motion.

16.     **Cash Management Motion**. The Debtors seek entry of an order authorizing the Debtors to (i) continue and maintain their existing cash management system and bank accounts, and (b) continue using their existing business forms, checks and records.

17.     To facilitate the efficient operation of their businesses, in the ordinary course of business, the Debtors utilize an integrated, centralized cash management system to collect, transfer and disburse funds generated by their operations (the "**Cash Management System**"). The Cash Management System facilitates the Debtors' cash forecasting and reporting, monitoring the collection and disbursement of funds, maintenance of current and accurate

accounting records for all cash transactions, and administration of approximately 6 bank accounts (collectively, the "**Bank Accounts**") maintained at various banks (the "**Banks**").

18.    The Cash Management System is similar to those commonly employed by businesses comparable to the Debtors in economic scope and geographic reach.  Indeed, large, complex businesses use such systems because of the numerous benefits provided, including the ability to quickly and easily locate and trace funds, which allows the Debtors to control corporate funds, ensure cash availability to the Debtors, and reduce administrative expenses by facilitating the movement of funds. Any disruption of the Cash Management System would be extremely detrimental to the Debtors' operations.

19.    I believe that the relief requested in the Cash Management Motion is in the best interest of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate in the ordinary course without disruption. Accordingly, on behalf of the Debtors, I respectfully submit that the Court should approve the Cash Management Motion.

20.    **Taxes and Fees Motion**. The Debtors seek entry of any order: (i) authorizing, but not directing, the Debtors to pay applicable taxing authorities any taxes and fees that have accrued, but were not yet due and owing or were not paid in full as of the Petition Date, in the ordinary course of their business, and (ii) directing all banks to honor and pay (to the extent that sufficient funds are available in their Debtors' accounts) all checks and transfers for payment of such pre-petition taxes and fees.

21.    In the ordinary course of business, the Debtors: (a) incur and/or collect various taxes, including without limitation, sales, property, commercial rent, excise, commercial activity, goods and services, and other taxes (collectively, the "**Taxes**"); (b) incur various license, permit and other charges necessary to operate their business (collectively, the "**Fees**"); and (c) remit such Taxes and Fees to various taxing, licensing, and other regulatory authorities (collectively, the "**Taxing Authorities**"). As of the Petition Date, the Debtors owe approximately $68,259.07

in Taxes and Fees. Of this amount, the Debtors seek to pay approximately $59,565.11 in Taxes and Fees during the first thirty (30) days of these chapter 11 cases.

22.    It is my understanding that the Debtors' failure to pay the Taxes and Fees could adversely affect the Debtors' business operations because the Taxing Authorities could suspend the Debtors' operations, file liens or seek to lift the automatic stay.

23.    I believe that the relief requested in the Taxes and Fees Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate in the ordinary course without disruption. Accordingly, on behalf of the Debtors, I respectfully submit that the Court should grant the Taxes and Fees Motion.

24.    **Insurance Motion**. The Debtors seek authorization to: (i) pay pre-petition insurance premiums, (ii) continue pre-petition insurance programs, and (iii) pay all pre-petition obligations in respect thereof (the "**Insurance Motion**").

25.    As detailed in the Insurance Motion, the Debtors utilize approximately eleven (11) insurance policies for, among other things, worker's compensation, professional liability, automobile, ocean cargo, travel accident, umbrella, cyber, and crime coverage (collectively, the "**Insurance Policies**").    In the aggregate, the premiums for such policies approximate $537,644.00. As of the Petition Date, the Debtors estimate that they owe approximately $0.00 under their Insurance Policies. The Debtors estimate that approximately $62,000 will come due within the first thirty (30) days of these chapter 11 cases under their Insurance Policies.

26.    Maintaining the Insurance Policies is essential to the preservation of the value of the Debtors' businesses, properties and assets. Moreover, in many cases, coverage provided by the Insurance Policies is required by the laws, regulations and contracts that govern the Debtors' commercial activities. It is, therefore, critical that the Debtors continue to carry the necessary coverage to operate their businesses.

27.    Disruption of the Debtors' insurance coverage would expose the Debtors to serious risks, including: (a) the incurrence of direct liability for the payment of claims that

otherwise would have been payable by the insurance carriers; (b) the occurrence of material costs and other losses that would have otherwise been reimbursed by the insurance carriers; (c) the potential loss of good-standing status to conduct business in jurisdictions that require the Debtors to maintain certain levels of third-party coverage; (d) the inability to obtain similar types of insurance coverage; and (e) the incurrence of higher costs for obtaining new coverage.

28.     Thus, I believe that the relief requested in the Insurance Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate in the ordinary course without unnecessary disruption. Accordingly, on behalf of the Debtors, I respectfully submit that the Court should grant the Insurance Motion.

29.     **Utilities Motion**. The Debtors seek entry of interim and final orders (a) prohibiting utility providers from altering, refusing or discontinuing services, (b) determining adequate assurance of payment for future utility services, (c) establishing procedures for determining adequate assurance of payment for future utility service, and (d) granting related relief.

30.     In the ordinary course of business, the Debtors obtain water, gas, electric, telecommunication, internet, security and other services from approximately eighteen (18) utility providers (the "**Utility Providers**").  A list of the Utility Providers and corresponding accounts is attached to the Utilities Motion. The Debtors pay approximately $43,599.02 each month for utility services, calculated as a historical average payment for a twelve-month period.   The Debtors estimate that the amount currently held as deposits or prepayment with respect to any Utility Provider is approximately $102,652.94.[2]

31.     Uninterrupted utility services are essential to the Debtors' ongoing operations  If the Utility Providers refuse or discontinue service, even for a brief period, the Debtors' business operations will be severely disrupted. The impact on the Debtors business operations, customer

---

[2]     Such deposit is held for the benefit of Memphis Light Gas & Water.

relationships, revenue and profits will be extremely harmful and will jeopardize the Debtors' efforts to maximize the value of their estates.

32.    The Debtors intend to pay the postpetition obligations owed to the Utility Providers in a timely manner in the ordinary course of business. Cash held by the Debtors, the cash generated in the ordinary course of business, and cash available under the Debtors' proposed post-petition financing facility will provide sufficient liquidity to pay the Debtors' utility service obligations in accordance with prepetition practice. To provide additional assurance of payment, the Debtors propose to deposit into a segregated account $22,000 (the "**Adequate Assurance Deposit**"), which represents an amount equal to approximately two weeks of all of the Debtors' utility services. The Adequate Assurance Deposit will be held in the segregated account for the duration of these chapter 11 cases to be applied to any postpetition defaults in payment to the Utility Providers. I believe that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with prepetition practice, provides more than adequate assurance of payment to the Utility Providers.

33.    I believe that the relief requested in the Utilities Motion is necessary to avoid immediate and irreparable harm, is in the best interests of the Debtors' estates, their creditors and all other parties in interest, and will enable the Debtors to continue to operate in the ordinary course without disruption. Accordingly, on behalf of the Debtors, I respectfully submit that the Court should grant the Utilities Motion.

34.    **Schedules Extension Motion**. The Debtors seek entry of an order (a) extending the deadline by which the Debtors must file their schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs (collectively, the "**Schedules and Statements**") by thirty (30) days, for a total of forty-four (44) days after the Petition Date, without prejudice to the Debtors' right to request additional extensions (the "**Schedules Extension Motion**").

35.    I believe that the relief requested in the Schedules Extension/Waiver Motion is appropriate because it (a) will not prejudice or adversely affect the rights of any creditor or other

party in interest and (b) will relieve the Debtors of an administrative burden. The Debtors' focus should be on seamlessly transitioning into chapter 11 and maximizing the value of their estates.

36.     **Wage and Benefits Motion**. The Debtors seek authorization to (i) pay all pre-petition employee claims for wages, salaries and other accrued compensation; (ii) make all payments for which employee payroll deductions were withheld prepetition; (iii) reimburse all prepetition employee business and other expenses; (iv) make prepetition contributions and pay benefits under certain employee benefit plans; (v) honor worker compensation programs; (vi) pay other miscellaneous employee-related costs including processing costs and fees; and (vii) continue certain health, welfare and benefit programs (collectively, the "**Employee Obligations**").

37.     As of the Petition Date, the Debtors believe they are current with respect to their employee wages.  However, out of an abundance of caution, they request authority to pay such wages, along with any other prepetition Employee Obligations, in an amount not to exceed the statutory cap of $13,650 per employee.

38.     I believe the relief requested in the Wage and Benefits Motion is warranted.  In short, any delay in honoring the Employee Obligations could severely disrupt the Debtors' relationships with their employees and irreparably impair the employees' morale at the very time that their dedication, confidence and cooperation are most critical.  The Debtors face the risk that their operations may be severely impaired if the relief requested in this Motion is not granted.  At this critical stage, the Debtors simply cannot risk the substantial disruption of their business operations that would attend any decline in workforce morale attributable to the Debtors' failure to pay the Employee Obligations in the ordinary course of business during the pendency of these Chapter 11 Cases.  Accordingly, on behalf of the Debtors, I respectfully submit that the Court should grant the Wage and Benefits Motion.

39.     **Debtor in Possession Financing Motion**.  As of the Petition Date, the Debtors' do not have available sources of working capital and financing sufficient to carry on their business operations without postpetition financing and the use of CIT's cash collateral.

40.    Without postpetition financing and the use of cash collateral, the Debtors will not have sufficient liquidity to continue to fund their operations, fund employee payroll and benefits obligations, pay vendors of necessary goods and services, and satisfy other operational requirements during these Chapter 11 Cases. I believe that obtaining postpetition financing and continued use of cash collateral as requested in the Debtor in Possession Financing Motion is essential to the Debtors' ability to continue their operations without interruption and maximize value of their estates for the benefit of all stakeholders.

41.    Accordingly, the Debtors request the entry of interim and final orders (i) authorizing the sale of their accounts arising after the commencement of the Chapter 11 Cases (the "**Postpetition Accounts**") and obtain debtor-in-possession senior secured superpriority financing (the "**DIP Factoring Facility**") pursuant to a Factoring Agreement between CIT and the Debtors (the "**DIP Factoring Agreement**," and together with the Factoring Documents (as defined in the DIP Factoring Agreement), including without limitation the Security Agreement and the Letter of Credit Agreement, each between CIT and the Debtor and dated as of the Petition Date, the "**DIP Factoring Documents**") by and among the Debtor and CIT; (ii) granting superpriority administrative expense status to the obligations of the Debtors under the DIP Factoring Documents and securing such obligations with liens on and security interests in the prepetition and postpetition assets of the Debtors; and (iii) granting adequate protection to CIT to the extent of any diminution in the value of the collateral as a result of the Chapter 11 Cases.

42.    The DIP Factoring Facility is the product of arms-length negotiations, is fair and reasonable under the circumstances, and is in the best interests of the Debtors, their estates, and all parties in interest. I am advised that the proposed DIP Factoring Facility is consistent with postpetition financing typically approved in chapter 11 cases in this District.

## PART V:
## LOCAL RULE 1007-2 DISCLOSURES

43.    <u>Local Rule 1007-2(a)(1)</u>: A statement regarding the nature of the Debtors'
businesses and the circumstances leading to the filing of the chapter 11 cases is set forth above.

44.    <u>Local Rule 1007-2(a)(2)</u>: Not applicable because the chapter 11 cases were not
originally commenced under chapter 7 or chapter 13 of the Bankruptcy Code.

45.    <u>Local Rule 1007-2(a)(3)</u>: Not applicable because no committee was organized
before the Petition Date.

46.    <u>Local Rule 1007-2(a)(4)</u>: **Exhibit 1** lists the twenty (20) largest unsecured
claims, excluding the claims of insiders, against the Debtors as of the Petition Date and includes,
to the extent such information is available, the creditor's name, address (including the number,
street, apartment or suite number, and zip code, if not included in the post office address),
telephone number, e-mail address, the name(s) of person(s) familiar with the Debtors' accounts,
and the amount of the claim.[3] The Debtors reserve any and all rights (i) as to whether any claim
is contingent, unliquidated, disputed or subject to setoff, (ii) to challenge the priority, nature,
amount and status of any claim or debt, and (iii) to assert any remedies, defenses, counterclaims
and offsets with respect to each of the foregoing.

47.    <u>Local Rule 1007-2(a)(5)</u>: **Exhibit 2** lists the five (5) largest secured claims against
the Debtors as of the Petition Date and includes, to the extent such information is available, the
creditor's name, address (including the number, street, apartment or suite number, and zip code,
if not included in the post office address), the amount of the claim,[4] and a brief description and
an estimate of the value of the collateral securing the claim. The Debtors reserve any and all
rights: (i) as to the validity, enforceability and priority of each claim and lien, and (ii) to assert
remedies, defenses, counterclaims and offsets with respect to such claim.

---

[3]    The amounts listed represent the Debtors' best estimate of the amounts of such claims and are
subject to verification.

[4]    The amounts listed represent the Debtors' best estimate of the amounts of such claims and are
subject to verification.

48.     Local Rule 1007-2(a)(6), **Exhibit 3** provides a summary of the Debtors' assets and liabilities.

49.     Local Rule 1007-2(a)(7): Not applicable because the Debtors do not have any classes of publicly held stock, debentures or other securities.

50.     Local Rule 1007-2(a)(8): Not applicable because none of the Debtors' property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

51.     Local Rule 1007-2(a)(9): **Exhibit 4** lists the premises owned, leased or held under another arrangement from which the Debtors operate their businesses.

52.     Local Rule 1007-2(a)(10): **Exhibit 5** lists the location of the Debtors' substantial assets, the location of their books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

53.     Local Rule 1007-2(a)(11): **Exhibit 6** lists the nature and present status of each action or proceeding, pending or threatened against the debtor or its property where a judgment against the Debtors or seizure of the Debtors' properties may be imminent as of the Petition Date.

54.     Local Rule 1007-2(a)(12): **Exhibit 7** lists the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

55.     Local Rule 1007-2(b): The Debtors intend to continue operating their businesses.

56.     Local Rule 1007-2(b)(1): The Debtors estimate that the weekly payroll for employees (exclusive of officers, directors, stockholders and partners) during the thirty (30) day period following the Petition Date will be $145,000.

57.     Local Rule 1007-2(b)(2): The Debtors estimate that the amount to be paid to the their officers and directors for the thirty (30) day period following the Petition Date will be $92,500, and that the amount to be paid to their financial and business consultants for the thirty (30) day period following the Petition Date will be $0.00.

58.    Local Rule 1007-2(b)(3): **Exhibit 8** provides a schedule, for the thirty (30) day period following the Petition Date, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but which remain unpaid, other than professional fees.

59.    I am advised that venue of the chapter 11 cases in this District is proper because a principal asset of The Northwest Company, LLC is its showroom, which is located in this district at 261 5th Avenue, Suite 1111, New York, New York 10016.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 18, 2019

Ross Auerbach
President and Chief Executive Officer

## EXHIBIT 1
## 20 Largest Unsecured Claims

| Vendor Name | Address | Amount |
|---|---|---|
| ASHFORD TEXTILES, LLC USA | 1535 W. 139TH STREET GARDENA, CA 90249 | 25,700,012.66 |
| SUZHOU MEGATEX IMPORT & EXPORT | RM 2201, NO. 88 SHUSHAN ROAD NEW DISTRICT SUZHOU CITY,  CHINA | 5,152,295.77 |
| NFL PROPERTIES LLC | LICENSING DEPARTMENT 345 PARK AVENUE NEW YORK, NY 10154 | 3,366,283.27 |
| GRUPO TEXTIL PROVIDENCIA SA de | AVE JUAN CUAMATZI SAN BERNARDINO CONTLA, TLAXCALA,  CP 90670 MEXICO | 2,374,231.41 |
| DISTRIBUTION ALTERNATIVES DBA | 6870 21ST AVE SOUTHLINO LAKES, MN 55038 | 2,290,959.19 |
| LIANYUNGANG YINGYOU LICHENG PL | NO 1 ZHENXING ROAD HAIZHOU DEVELOPMENT ZONE LIANYUNGANG CITY JIANGSU,  CHINA | 1,941,917.72 |
| ROSENTHAL & ROSENTHAL (FACTOR) | HEIWEI USA LLC PO BOX 88926 CHICAGO, IL 60695-1926 | 1,777,634.68 |
| STANDARD FIBER LLC | 577 AIRPORT BLVD, SUITE 200 BURLINGAME, CA 94010 | 1,428,414.29 |
| EXETER OPERATING PARTNERSHIP I | 101 WEST ELM STREET, SUITE 600 CONSHOHOCKEN, PA 19428 | 1,233,818.20 |
| LIANYUNGANG FEIYAN BLANKETS CO | 1ZHENXING ROAD, HAIZHOU DEV ZONE LIANYUNGANG, JIANGSU, CHINA | 1,113,260.87 |
| IMG MODELS LLC | PENTHOUSE NORTH 304 PARK AVENUE SOUTH NEW YORK, NY 10010 | 1,004,753.38 |

| | | |
|---|---|---|
| DISNEY CONSUMER PRODUCTS, INC. | 500 SOUTH BUENA VISTA STREET BURBANK, CA 91521-8651 | 673,294.66 |
| MAJOR LEAGUE BASEBALL | 245 PARK AVE NEW YORK, NY 10167 | 650,001.00 |
| SUZHOU LIANDE IMPORT & EXPORT | RM1201A NO 269 WASGDUN ROAD SIPSUZHOU CITY JIANGSU 215000 CHINA | 641,071.88 |
| ALFULL LUGGAGE CORPORATION | C/O NO 73 SINYI ROAD FEN YUAN TOWNSHIP CHANGHUA COUNT 502, TAIWAN | 525,472.84 |
| UNIFI MANUFACTURING INC. | PO BOX 602749 CHARLOTTE, NC 28260-2749 | 525,016.41 |
| NATIONAL HOCKEY LEAGUE | 1185 AVE OF THE AMERICAS, 14TH FLOOR NEW YORK, NY 10036 | 451,319.29 |
| REFINE INTERNATIONAL HONG KONG | FLAT 309 3F, MEGA TRADE CENTER 1 MEI WAN STREET TSUEN WAN, HONG KONG | 355,907.01 |
| WARNER BROS. CONSUMER PRODUCTS | 4001 W. OLIVE AVE BURBANK, CA 91505 | 341,082.66 |
| MARVEL | 1600 ROSECRANS AVENUE BLDG 7 / SUITE 110 MANHATTA BEACH, CA 90266 | 276,690.86 |

**EXHIBIT 2**
**5 Largest Secured Claims**

| Creditor | Amount of Claim | Description of Claim | Value of Collateral Securing Claim | Lien or Claim Disputed (Y/N) |
|---|---|---|---|---|
| CIT Commercial Service | $19,163,980.60 | Credit Agreement | A/R: $10,500,000<br><br>Inventory: $20,500,000 | N |
| Ashford Textiles LLC | $10,000,000 | Promissory Note | None | Y |

**EXHIBIT 3**
**Summary of Assets and Liabilities**

|  | MARCH 2020 (ACTUAL) |
|---|---|
| Cash | 778,359 |
| Accounts receivable | 73,786 |
| Inventory | 23,130,599 |
| Prepaid expenses | 6,604,377 |
| Loans & exchanges | 47,810 |
| Due from factor | (6,154,036) |
| Due from Related Party | 247,491 |
| Employee receivable | 139,368 |
| Loan – Ross | 3,407,890 |
| Loan – Glenn | 15,000 |
| Prepaid royalty | 4,261,185 |
| NW.COM | - |
| **Total Current assets** | **32,551,828** |
|  |  |
| **Property plant & equipment** |  |
| Land | 72,800 |
| Building | 1,272,700 |
| Furniture & equipment | 914,978 |
| Machinery & equipment | 8,402,143 |
| Leasehold equipment | 3,639,678 |
| Auto | 84,706 |
| Screens & molds | 5,264,636 |
| Website | 267,328 |
| Less: accumulated depreciation | (11,991,012) |
| Total Property plant & equipment | 7,927,958 |
| Other assets | 63,879 |
| Intangibles, Net | 2,562,167 |
| Security deposits | 252,592 |
| Total other assets | 2,878,638 |
| **Total Assets** | **43,358,424** |
|  |  |
| **Current liabilities** |  |
| Accounts payable – trade | 54,220,323 |
| Payroll taxes payable | 845,120 |
| Sales tax payable | - |
| Income Tax payable | 5,985 |
| Accrued expenses | (9,867,944) |
| Loan payable – NWTH | 914,128 |
| Suspense | - |
| Accrued income taxes | (200) |
| Estate of Shay Auerbach | - |
| Customer advance | 719,593 |
| Accrued royalties | (94,069) |
| NW.COM | - |
| **Total current liabilities** | **46,742,936** |
| Long -term liabilities Mortgage payable -LT | 1,517,634 |
| Notes Payable-Ashford Textile | 10,000,000 |
| Partners Capital | (14,902,145) |
|  |  |
| **Total Liabilities & Partners Capital** | **43,358,424** |

## EXHIBIT 4
**Owned and Leased Premises**

| Northwest Locations | Landlord |
|---|---|
| The Northwest Company, LLC<br>49 Bryant Ave, Roslyn, NY 11576<br>516.484.6996 | Pegasus Partners LLC<br>49 Bryant Ave, Roslyn, NY 11576 |
| The Northwest Company, LLC<br>66-68 Skillman Street, Roslyn, NY 11576<br>516.484.6996 | Pegasus Partners LLC<br>49 Bryant Ave, Roslyn, NY 11576 |
| The Northwest Company, LLC<br>261 5th Avenue Suite 1111, New York, NY 10016<br>516.484.6996 x420 | 261 Fifth Ave TIC Owner LLC<br>PO Box 2162, Hicksville, NY 11805 |
| The Northwest Company, LLC<br>1406 East Central Ave. Suite #2<br>Bentonville, AR 72712<br>479-464-8685 | JW Properties Group 18403 N Laguna Azul Drive Surprise, AZ 85374 |
| The Northwest Company, LLC<br>5090 Whiteville Road NW, Ash, NC 28420<br> 516.484.6996 | Shay Auerbach Estate<br>49 Bryant Ave, Roslyn, NY 11576 |
| The Northwest Company, LLC<br>135 Clingman Road, Ronda, NC 28670 Office<br>516.484.6996 x353 | Owned by The Northwest Company LLC |
| 800 Lasalle Avenue<br>Minneapolis, MN 55486 | Zeller 800 Lasalle Avenue LLC PO Box 860129<br>Minneapolis, MN 55486 |
| 4755 Southpoint Dr.<br>Memphis, TN 38118 | Exeter 4755 Southpoint LLC<br>4755 Southpoint Dr.<br>Memphis, TN 38118 |

**EXHIBIT 5**
**Location of the Debtors' Substantial Assets, Books and Records,**
**and Assets Outside of the United States**

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Books and Records | 49 Bryant Ave, Roslyn, NY 11576 | N/A |
| Real Property | See Exhibit 4 | N/A |
| Inventory | Distribution Alternatives DBA DSS 17820 Slover Avenue Bloomington, CA 92316 | N/A |

**EXHIBIT 6**
**Pending Litigation**

<u>Pending Matters</u>

- Ashford Textiles, LLC v. The Northwest Company LLC, *et al.* (Superior Court of California, Case No. 20TRCV0018). A complaint was filed on February 27, 2020, alleging breach of contract and other claims. The complaint seeks at least $2,349,755.45, plus costs and other amounts.

- Standard Fiber, LLC v. The Northwest Company LLC, *et al.* (Superior Court of California, Case No. 20-civ-00933). A complaint was filed on February 13, 2020, alleging certain failures to pay invoices and amounts allegedly due for certain purchase orders for various home furnishing and apparel textile retail products. The complaint seeks at least $1,340,000, plus costs and other amounts. A case management conference has been scheduled for June 17, 2020 at 9:00 a.m. (PT).

- CRL Advisory Inc. f/k/a Chargeback Recovery & Logistics Inc. v. The Northwest Company, Inc. (N.Y Sup. Ct., Index No. 650747/2020). A complaint was filed on February 3, 2020 alleging breach of contract and other claims. The complaint seeks at least $83,204.70 in damages, plus others amounts.

- Xiamen Flyone International Trading, Limited v. The Northwest Company, LLC (N.Y. Sup. Ct. Index No. 604585/2019).

- USPA Accessories, LLC d/b/a Concept One Accessories v. The Northwest Company LLC, AAA Case No. 01-20-0000-0855.

<u>Claims Not Yet in Litigation</u>

- China Export & Credit Insurance Corporation (Sinosure) o/b/o Suzhou Liande Import and Export (Claim # EC202001053; $642,030.96).

- China Export & Credit Insurance Corporation (Sinosure) o/b/o Xiamen jastone Import and Export (Claim # EC201607647; $354,056.76).

- China Export & Credit Insurance Corporation (Sinosure) o/b/o Shanghai Refine Textile Co., Ltd. (Claim # EC202001541; $396,262.65).

- China Export & Credit Insurance Corporation (Sinosure) o/b/o Grand Rich Industrial (HK) Limited (Claim # unknown; $8,905.68).

**EXHIBIT 7**
**Senior Management**

| Name | Title | Tenure with Debtors | Responsibilities/ Experience |
|---|---|---|---|
| Auerbach, Ross | President & CEO | 8/1/1994 – Present | Principal decision-maker for the Debtors |
| Auerbach, Glenn | EVP | 8/1/1994 – Present | Sales/Logistics |
| Jolson, Robert | CFO | 5/21/2012 – Present | Finance |

.

## EXHIBIT 8
### Cash Receipts and Disbursement, Net Cash
### Gain or Loss, Unpaid Obligations and Receivables

| | |
|---|---|
| **Cash Receipts** | $4,894,910[1] |
| **Cash Disbursements** | $(5,215,482) |
| **Net Cash Gain (Loss)** | $(320,572) |
| **Unpaid Obligations (Excluding Professional Fees)** | $1,595,230 |
| **Unpaid Receivables (Excluding Professional Fees)** | $1,198,444 |

---

[1]    Cash receipts are paid directly to CIT per factoring agreement.  The amount shown for cash receipts represents borrowings.