HEARING DATE AND TIME: April 23, 2020 @ 11:00 A.M. (EDT)

**BROWN RUDNICK LLP**
Robert J. Stark
Sigmund S. Wissner-Gross
Kenneth J. Aulet
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
rstark@brownrudnick.com
swissner-gross@brownrudnick.com
kaulet@brownrudnick.com

*Counsel to Extreme Horse Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
                                                              :
In re:                                                        :    Chapter 11
                                                              :
THE NORTHWEST COMPANY, LLC, *et al.*[1]                       :    Case No.: 20-10990 (MEW)
                                                              :
                                    Debtors.                  :    (Jointly Administered)
-------------------------------------------------------------X

**MOTION TO DISMISS BANKRUPTCY PETITION OF THE NORTHWEST COMPANY, LLC**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: The Northwest Company, LLC (8132) and The Northwest.com LLC (1339). The location of the Debtors' service address is: 49 Bryant Avenue, Roslyn, New York 11576.

Extreme Horse Limited ("Extreme Horse") hereby files this Motion to Dismiss the Bankruptcy Petition of The Northwest Company LLC (the "Motion to Dismiss") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The filing of the bankruptcy case of Northwest (as defined below) was unauthorized under North Carolina law, and was thus a nullity. If the Court holds that the filing was unauthorized under North Carolina law, the case should be dismissed for lack of jurisdiction and the Court need not reach any other issue in the case.

2. Although Extreme Horse and Auerbach have a contentious relationship – due largely to Auerbach's repeated misconduct both with regard to Northwest (misconduct that, if this case is not dismissed, will likely result in a motion for the appointment of a trustee to oversee these cases) and with regard to his other business venture with Extreme Horse, that relationship is not relevant to the issue before the Court today. Instead, the issue before this Court is a simple legal issue: did Auerbach need to obtain the consent of Extreme Horse – a member of Northwest - under applicable law, to file the Petition on behalf of Northwest?

3. As will be demonstrated below, the answer is yes. The consent of Extreme Horse was required for any bankruptcy filing on behalf of Northwest to be valid. Because that consent was not sought or obtained (and will not be forthcoming) this case must be dismissed for lack of jurisdiction.

## RELIEF REQUESTED

4. Extreme Horse seeks entry of an order, substantially in the form attached hereto as Exhibit A, dismissing the bankruptcy case of Northwest.

## JURISDICTION

5.      Extreme Horse has asserted objections to and challenged Auerbach's authority to file the Petition.  However, without waiver of its objections, Extreme Horse acknowledges that this Court generally has jurisdiction over the subject matter of this motion pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

6.      The Northwest Company, LLC ("Northwest") filed a bankruptcy petition (the "Petition") on April 18, 2020 (the "Petition Date") that was purportedly authorized by Ross Auerbach ("Auerbach") as manager and by Northwest Textiles LLC ("Northwest Textiles") as a member.

7.      In the Petition, Debtor certified that Extreme Horse holds a 20% interest in and is a member of Northwest.[2]  Debtor also certified in tax returns filed with the United States that Extreme Horse acquired its 20% economic interest and member interest in Northwest in 2017.  At the time, the only other member of Northwest was Northwest Textiles which held 80% ownership interest.  No LLC agreement was signed by Extreme Horse, nor was Extreme Horse aware of any LLC agreement that existed prior to Extreme Horse becoming a member.

8.      At some point following the admission of Extreme Horse as a member to Northwest, Auerbach or persons acting at his direction prepared a proposed LLC agreement (the

---

[2] Northwest has suggested that Extreme Horse has alleged in litigation in California that it did not acquire such an interest.  The litigation that Northwest appears to refer to is Ashford Textiles LLC v. The Northwest Company LLC, et al., currently pending in the United States District Court for the Central District of California, Western Division, Case no. 20-cv-03150   Extreme Horse is not a party to this California litigation and did not make any such statement in the California litigation.  Further, it is unclear what statement made in the complaint in this action (not drafted by Extreme Horse) alleges that Extreme Horse does not have an interest in Northwest.  However, the California litigation contains numerous allegations of self-dealing by Auerbach, including use of company cash to loan himself $3 million, charge his daughter's college tuition to Northwest, charge family vacations to Northwest, and other allegations that may form the basis of a motion to appoint a trustee in these cases.

"Proposed LLC Agreement")[3] on behalf of Northwest Textiles, and proposed that it be executed as the operative LLC agreement for Northwest. The Proposed LLC Agreement would have transferred substantial power to Auerbach and Northwest Textiles compared to the "default" rules of North Carolina that control when no LLC agreement has been executed by members, to the detriment of Extreme Horse. Extreme Horse did not execute the Proposed LLC Agreement, nor did it express its assent to the Proposed LLC Agreement. Instead, Northwest continued to operate under the controlling North Carolina "default" LLC rules that it had operated under previously.

9. At no point has Extreme Horse consented to the admission of any new member of Northwest. While the Proposed LLC Agreement disclosed that Auerbach held a 1% economic interest, it included no line for Auerbach to sign the Proposed LLC Agreement as a member in his personal capacity. It did, however, include a line for Extreme Horse to sign the Proposed LLC Agreement as a member.

10. Extreme Horse's consent was not sought for the Petition, nor did Extreme Horse formally or informally approve it.

## ARGUMENT

11. The Petition was filed on behalf of Northwest without legal authorization under the laws of North Carolina, and thus this case must be dismissed for lack of jurisdiction.

**Dismissal of an Unauthorized Filing is Mandatory As The Court Lacks Jurisdiction**

12. Where a filing is unauthorized, the Court must as a matter of law dismiss the petition. Under federal law, the authority to file a bankruptcy petition on behalf of a corporation derives from state law and where authority under local law is found lacking, the court has no

---

[3] A copy of the Proposed LLC Agreement is attached as Exhibit A to the Declaration of Uriel Pinelo (the "Pinelo Declaration") filed contemporaneously herewith.

3

alternative but to dismiss the petition. *See Jolly v. Pittore*, 170 B.R. 793, 797 (S.D.N.Y. 1994) ("A person filing a voluntary bankruptcy petition on a partnership's behalf must be authorized to do so, and authorization must derive from state law."); *In re Cabernet Holdings, LLC*, 2010 WL 2540116, at *2 (Bankr. M.D.N.C. June 21, 2010) ("State law determines who has authority to institute a bankruptcy proceeding on behalf of a legal entity, and "where authority under local law is found lacking, the court 'has no alternative but to dismiss the petition.'"); *In re J & J Property Holdings, LLC*, No. 03–34667, 2004 WL 5463804, at *2 (Bankr. W.D.N.C. Jan. 20, 2004) (dismissing case where member had inadequate authority to act on behalf of LLC).

13. The absence of a valid petition deprives the bankruptcy court of jurisdiction over the purported debtor. *See Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1259 (8th Cir. 1994) ("there first must be valid jurisdiction over the matter before a bankruptcy court can proceed. In the absence of a valid petition, a bankruptcy court has no basis upon which to dispose of a corporation's assets or resolve its debt status."); *see also Price v. Gurney* 324 U.S. 100, 107 (1945).

**Unanimous Consent of All Members of Northwest Was Required to File the Petition**

14. As there is no signed LLC agreement, nor (as discussed further below) or even any unsigned agreement that may be enforced under North Carolina law, North Carolina law supplies the default terms for a LLC.

15. Under North Carolina law, a manager (such as Auerbach) does not have the power to file for bankruptcy because under North Carolina law, the powers of a manager are limited to acts taken in the ordinary course of business, and a bankruptcy filing is not an act in the ordinary course of business. *See In re Cabernet Holdings, LLC*, 2010 WL 2540116 (Bankr. M.D.N.C. June 21, 2010) (Court ruled that bankruptcy petition filed by manager was

4

unauthorized because it exceeded the powers delegated to managers under North Carolina law, holding "[t]he filing of a bankruptcy petition is not the subject of any exception, is beyond day-to-day management"). As a result, Auerbach *must* first seek and obtain approval of the members of the LLC in order to file for bankruptcy under the applicable LLC agreement or (in the absence of such an agreement) applicable North Carolina law.

16. Default North Carolina law requires unanimous member consent for approval of actions that must be approved by members of the LLC. *See* N.C. Gen. Stat. § 57D–3–03 ("The approval of <u>all</u> members is required to do any of the following:") (emphasis added). These actions include, but are not limited to, sales of all or substantially all assets of the company, or the dissolution of the company. *Id*. Extreme Horse did not consent, therefore approval of all members was not obtained.

17. *In re S & R Grandview, LLC* analyzed the requirements of Section 3-03(3)[4] and concluded that a bankruptcy filing fell squarely within the actions covered by that section. No. 13-03098-8-RDD, 2013 WL 5525729, at *2 (Bankr. E.D.N.C. Oct. 4, 2013). In that case, the relevant operating agreement incorporated North Carolina law by permitting the manager to do all actions *except* those that the law required to be performed by members:

> "the Managers may exercise all such powers of the [Debtor] and do all such lawful acts and things as **are not directed or required to be exercised or done by the Members pursuant to the [North Carolina Limited Liability Company Act, Chapter 57C of the North Carolina General Statutes]**, the Articles of Organization, or this Operating

---

[4] This reference was to the previous codification of North Carolina's LLC law, but the changes to this provision are not relevant here. *Compare* N.C. Gen.Stat. § 57C–3–03(3) ("Sell, transfer, or otherwise dispose of all or substantially all of the assets of the limited liability company prior to the dissolution of the limited liability company.") *with* N.C. Gen.Stat. § 57D–3–03(3) ("Other than in the ordinary course of business, transfer in one transaction or a series of related transactions all or substantially all of the assets of the LLC prior to the dissolution of the LLC."). Further, the changes to section 3-03 added an additional basis to find that this section covers a bankruptcy filing, by adding "(4) Dissolve the LLC under circumstances other than those for which the LLC may be dissolved under Article 6 of this Chapter." as an additional element requiring unanimous member consent. This section did not exist when analyzed by the *S & R Grandview* court.

5

Agreement."

*Id.* (quoting agreement) (emphasis added).

18. In interpreting the bolded section, the *S & R Grandview* court referenced Section 3-03(3)'s requirement that members consent to the transfer of all or substantially all assets prior to the dissolution of the company. *Id.* ("Pursuant to North Carolina General Statute § 57C–3–03(3), approval of all members is required to [s]ell, transfer, or otherwise dispose of all or substantially all of the assets of the limited liability company prior to the dissolution of the limited liability company.") (internal quotations omitted). Relying on this section, the *S & R Grandview* court held that the filing of a bankruptcy petition must be authorized by members under Section 3-03(3) and as the manager had not obtained the requisite consent (changed from the default unanimity requirement to a 60% majority by the operating agreement) from the members, the bankruptcy filing was unauthorized. *Id.* at *4.

19. It is black-letter law that the filing of a bankruptcy petition creates a transfer of all assets of the petitioner to a bankruptcy estate which necessarily implicates Section 3-03(3). At the commencement of a chapter 11 case, all of the debtor's assets are transferred into and become property of "a new legal entity that is distinct from [the debtor] itself: the bankruptcy estate." *Indian Harbor Ins. Co. v. Zucker for Liquidation Tr. of Capitol Bancorp Ltd.*, 860 F.3d 373, 378 (6th Cir. 2017) (holding that "All of [debtor's] assets, including all causes of action, became property of the bankruptcy estate" pursuant to 11 U.S.C. § 541(a)(1)); *see also In re Lucre, Inc.*, 434 B.R. 807, 832 (Bankr. W.D. Mich. 2010) ("A bankruptcy estate is a legal entity that exists separate and apart from the petitioning debtor. As for the estate's trustee or debtor-in-possession, they are simply the representatives through which this fictional entity is able to act."); *In re McClelland*, 418 B.R. 61, 67 (Bankr. S.D.N.Y. 2009) ("It is well settled that, even

6

where the debtor is an individual, the chapter 11 debtor is an entity different from the chapter 11 debtor-in-possession, with different interests in property and different duties."), *aff'd in part, rev'd in part*, 456 B.R. 178 (S.D.N.Y. 2011). As a result, the filing of a bankruptcy petition – which (if valid) would transfer all assets of Northwest into the Northwest estate, legally effectuates a transfer of "all or substantially all" of the assets of Northwest, requiring unanimous consent.

20. Further, even if Section 3-03(3) did not require unanimous consent for *any* bankruptcy filing, it requires it for *this* bankruptcy filing. The Debtors' First Day filings make clear the purpose of these bankruptcy cases is a 363 sale of all assets; and the proposed DIP financing binds the Debtors to milestones to achieve such a sale. *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Sell Post-Petition Accounts And Obtain Secured Financing (II) Granting Adequate Protection and Related Relief, and (III) Schedulking a Final Hearing* [Docket No. 11] (the "DIP Motion") at 4 (requiring specific milestones for each component of a 363 sale and a requirement a 363 sale be closed by September 18, 2020). Indeed, the written consent that purported to authorize this filing reads that it is authorizing Auerbach "to market and sell, with the approval of the bankruptcy court, substantially all of the Company's assets." Petition at 11. The filing of this bankruptcy was thus an act to sell or transfer all or substantially all of Northwest's assets.

21. Further, the addition of a requirement for member unanimity for any "dissolution" of an LLC further reinforces the requirement that Extreme Horse consent to this bankruptcy filing. *See* N.C. Gen. Stat. Ann. § 57D-3-03(4). While Northwest contends that the "dissolution" of an LLC is distinct from a bankruptcy filing, this is belied by the (unsigned) LLC agreement they purported to rely on. The resolution attached to Northwest's bankruptcy petition

7

stated it was made pursuant to "Article XIII" of the purported agreement, which is entitled "Dissolution and Winding Up" and (like North Carolina law) does not explicitly reference a bankruptcy filing. *See* Proposed LLC Agreement § XIII.

### The Petition Was Not Approved By A Majority Of Members

22. Northwest has suggested that even if a bankruptcy filing is beyond Auerbach's powers, a two-thirds majority of members consented (Auerbach in his personal capacity as an alleged member, and Northwest Textile, as approved by Auerbach). This ignores the fact that under North Carolina law, while Auerbach could cause Northwest Textile to transfer him an economic interest, admission of Auerbach as a *member* (rather than an economic interest holder) required the consent of Extreme Horse, which was not sought or given. *See* N.C. Gen. Stat. § 57D–3–03(2) (requiring unanimous member approval for admission of a new member); N.C. Gen. Stat. Ann. § 57D-5-02 (permitting transfer of an economic interest without approval, but specifying such transfer does not create membership rights); N.C. Gen. Stat. Ann. § 57D-5-04 (economic interest holder may only become a member, inter alia, through consent of all members). Auerbach was not a member when Extreme Horse acquired its membership, and Extreme Horse did not consent to his admission as a member. Further, the Proposed LLC Agreement demonstrates that although Auerbach may have had an economic interest, he did *not* have a membership interest and the drafters recognized his lack of membership, or his signature would have been required for the Proposed LLC Agreement to become effective. *See* N.C. Gen. Stat. § 57D–3–03(1) (requiring unanimous approval to adopt or amend an operating agreement).

23. While North Carolina does not impose default majority voting rules on members (and thus, the standard is unanimity) there is no statute to look towards for majority voting rules. However, if this Court were to conclude that a simple majority of members could authorize a

8

bankruptcy filing, this Court would need to look to Section 3-20 (which governs how managers, which may make decisions by majority) operate: a majority is determined by number of managers, not interest. *See Peak Coastal Ventures, L.L.C. v. SunTrust Bank*, No. 10 CVS 6676, 2011 WL 1744109, at *6 (N.C. Super. May 5, 2011) ("But, the Operating Agreement, *unlike the default statutory provision*, does not authorize management by a majority of members; it requires a majority of ownership.") (emphasis added).

24. As a result, even if Northwest was correct that North Carolina imposed a simple majority requirement (which it does not) no majority of members approved this filing. There are two members of Northwest: one supported the filing, and the second (whose consent was not sought or obtained) vigorously opposes it. As a result, there is no majority.

**Northwest Cannot Enforce Proposed LLC Agreement Through Quasi-Estoppel**

25. Northwest appears to argue that Extreme Horse has accepted benefits under the Proposed LLC Agreement and thus is estopped from taking the inconsistent position that the Proposed LLC Agreement is invalid, and thus the Proposed LLC Agreement should be implied in law. This argument fails because the Proposed LLC Agreement offered no benefits to Extreme Horse over the existing "default" LLC rules, and thus any action taken by Extreme Horse consistent with the existence of Northwest would not have required assuming that the Proposed LLC Agreement was binding.

26. Under North Carolina law, quasi-estoppel exists to prevent a party from benefitting by taking two clearly inconsistent positions, and to prevail here Northwest must show that Extreme Horse unfairly benefited from taking inconsistent positions. *See Kyle v. Felfel*, 254 N.C. App. 684, 693–94, 803 S.E.2d 249, 256 (2017). To apply estoppel the case must "cry out for the need to moderate unjust results that would follow from the unbending application of common law rules and statutes." *Id.*

9

27.  Northwest will bear the burden of showing that Extreme Horse should be estopped from denying the validity of the Proposed LLC Agreement.  At this time, Extreme Horse is unaware of what Northwest will seek to argue was an accepted benefit and will respond to any such arguments raised in Northwest's papers at the hearing.  However, it is highly unlikely such evidence could exist.  Because North Carolina law creates default LLC rules, which require minimal (if any) action by Extreme Horse to maintain the company and accept the benefits that might flow from its existence, there are no actions Extreme Horse could reasonably have taken that would accept benefits *under the Proposed LLC Agreement*.  The Proposed LLC Agreement gave Extreme Horse no apparent benefits over the existing default rules: no actions taken by Extreme Horse would reflect accepting benefits under it, rather than accepting benefits of the existing default rules governing an LLC with no signed, accepted operating agreement.

28.  North Carolina legally requires the consent of all members to adopt an operating agreement.  As a result, North Carolina courts have required a high bar to enforce an unsigned agreement, which is not met here.  *See, e.g., Battles v. Bywater, LLC*, No. 14 CVS 1853, 2014 WL 5512304, at *4 (N.C. Super. Oct. 31, 2014) (enforcing an unsigned LLC agreement where party seeking to deny its effectiveness had personally signed the agreement and represented that it was valid in seeking to open a bank account).  Extreme Horse did not sign the Proposed LLC Agreement.  No party has alleged that Extreme Horse represented to them that the agreement had been signed, nor that Extreme Horse has agreed to its terms.

**CONCLUSION**

WHEREFORE, for all the reasons set forth herein, Extreme Horse respectfully request that the Court enter the order attached hereto as <u>Exhibit A</u>, granting this Motion and dismissing the Petition, and grant such other and further relief as the Court deems just and proper.

Dated: April 22, 2020
      New York, New York

                                              Respectfully submitted,

                                              <u>/s/ Robert J. Stark</u>
                                              Robert J. Stark
                                              Sigmund S. Wissner-Gross
                                              Kenneth J. Aulet
                                              BROWN RUDNICK LLP
                                              Seven Times Square
                                              New York, New York 10036
                                              Tel: 212-209-4800
                                              rstark@brownrudnick.com
                                              swissner-gross@brownrudnick.com
                                              kaulet@brownrudnick.com

                                              *Counsel to Extreme Horse Limited*