**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **THE NORTHWEST COMPANY,**[1] | Case No. 20-10990 (MEW) |
| Debtor. | Jointly Administered |

**BENCH DECISION DENYING MOTION TO DISMISS**

A P P E A R A N C E S :

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ, 07102
*Attorneys for Debtors*
  By:   Jason Teele
           Gregory Kopacz

BROWN RUDNICK
Seven Times Square
New York, NY 10036
*Attorneys for Movant* Extreme Horse Limited
  By:   Robert Stark
           Uriel Pinelo
           Sigmund Wissner-Gross

OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street
New York, NY 10014
  By:   Shannon Scott

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

       This is the final version of the Court's decision with respect to a motion to dismiss filed

by Extreme Horse Limited. It is based on a bench decision that I dictated in open court on April

---

[1]    The Debtors, and the last four digits of their federal tax identification numbers, are: The Northwest Company, LLC (8132) and The Northwest.com LLC (1339).

23, 2020. This official and final version of the decision has been edited to correct errors in transcription and some inadvertent errors that I made in the course of my dictation.

Debtor The Northwest Company, LLC is a limited liability company formed under the laws of the State of North Carolina. Extreme Horse Limited is listed in the Debtor's filings as an owner of the some of the Debtor's limited liability company interests. Extreme Horse contends that the bankruptcy filing for The Northwest Company, LLC was not properly authorized as a matter of North Carolina Law and that the case therefore should be dismissed.

Certain matters are not in dispute. The Articles of Organization for the Northwest Company LLC are available on the website maintained by the Secretary of State for the State of North Carolina. I have retrieved them and take judicial notice of them. The Articles of Organization provide that the Northwest Company LLC is a manager-managed LLC and is not a member-managed LLC. I have confirmed with the parties this morning that they agree that this is correct. I have also retrieved the annual reports filed with the State of North Carolina by The Northwest Company LLC. They all state that Ross Auerbach is the manager of the company. The parties agree that Ross Auerbach is the manager, and there is no contention that there are any other managers.

The parties dispute whether or not there is a separate operating agreement that supplements or amends the Articles of Organization for The Northwest Company, LLC. I do not need to reach that point, because I think that even if the objector, Extreme Horse, were correct, and even if there were no separate operating agreement, the bankruptcy filing nevertheless was authorized as a matter of North Carolina law.

In a manager-managed limited liability company the designated manager or managers have the authority to act on behalf of the company, subject only to limits set forth in the statute

or in an operating agreement. For purposes of Extreme Horse's argument here, I will assume without deciding that there was no separate operating agreement and that the Articles of Organization are the only governing document.

Extreme Horse argues that under North Carolina law the manager of a limited liability company can only take actions in the ordinary course of business. I believe that is a misstatement of North Carolina law. The North Carolina statute says generally that the manager or managers have the authority to act for the entity. *See* N.C. Gen. Stat. § 57D-3-20(a). There is nothing in that section that limits a manager's authority to matters done in the ordinary course of business. The North Carolina statute separately lists certain items that can only be done with the consent of all members, and I will review that in a moment. But otherwise the manager can act on behalf of the limited liability company as a matter of North Carolina law.

Extreme Horse has cited to the decision in *In re Cabernet Holdings, LLC*, No. 10-50602C, 2010 WL 2540116 (Bankr. M.D.N.C. June 21, 2010), in support of its contention. However, in the *Cabernet Holdings* case the relevant operating agreement said that each member would be a manager, and that the managers could delegate responsibility "for day-to-day management" to an individual member. *Id.* at *1. The court's discussion in *Cabernet Holdings* of the "day-to-day management" restriction was in the context of what that particular operating agreement said. *Id.* at *2. The court did not hold that as a general matter of North Carolina law managers can only handle ordinary course of business transactions.

Section 57D-3-03 of the North Carolina statute lists matters for which the approval of "all members" is required. This is the only place where I found any reference to matters done in the ordinary course of business. Subpart (3) states that the approval of all members is required if "[o]ther than in the ordinary course of business" there is a "transfer" in one transaction or a

3

series of related transactions of "all or substantially all" of the assets of the limited liability company prior to the dissolution of the limited liability company. N.C. Gen. Stat. § 57D-3-03. Extreme Horse contends that this "transfer" provision applies to a bankruptcy filing. I do not believe that is correct either as a matter of bankruptcy law or as a matter of North Carolina law.

Section 541 of the bankruptcy code provides that the commencement of a bankruptcy case "creates" an estate that is comprised of most of a debtor's property, with some exceptions. *See* 11 U.S.C. § 541. The estate defines the property that is subject to bankruptcy jurisdiction. In a chapter 11 case, such as this one, what happens to that property – including whether it remains with the debtor – depends on what happens during the chapter 11 case. In addition, unless a trustee is appointed, the debtor remains in possession of its businesses and properties as a debtor-in-possession in a chapter 11 case. *See* 11 U.S.C. § 1107.

Extreme Horse has cited to a statement by the Sixth Circuit Court of Appeals in its decision in *Indian Harbor Ins. Co. v. Zucker*, 860 F.3d 373, 378 (6th Cir. 2017), for the proposition that a bankruptcy "estate" is a "new legal entity that is distinct from" the debtor. It is true that the Sixth Circuit Court of Appeals used those words. However, the real issue in that case was whether a liquidating trustee was the same entity as the "debtor." In that same opinion, the Sixth Circuit Court of Appeals noted that the United States Supreme Court had previously held that a debtor-in-possession in bankruptcy should *not* be regarded as a new and legally distinct entity. *Id.* at 376-77.

More particularly, the Supreme Court held in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) that a debtor-in-possession who takes charge of an estate is not a legally distinct entity from the pre-bankruptcy debtor. The Court noted that if the debtor-in-possession were really a legally distinct entity there would be no need to give it the authority to reject contracts, because

4

as a separate entity it would not be bound by those contracts in the first place. The Court therefore rejected the various analogies and metaphors that have often appeared in prior decisions, and held that "for our purposes, it is sensible to view the debtor-in-possession as the same entity which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent its bankruptcy filing." *Id.* at 528.

On this basis, at least one court has rejected the purported statement in the Sixth Circuit's decision in *Indian Harbor* to the effect that a debtor is a "new entity" when it files for Chapter 11. *See In re HardRock HDD Inc.*, No. 17-46425, 2019 Bankr. LEXIS 1861, at *6 (E.D. Mich. June 29, 2017).

Extreme Horse has argued that it is "black letter law" that a bankruptcy filing constitutes a transfer of assets, but that is not the case. Decisions that speak of the estate as being separate from the debtor are in fact speaking metaphorically. It is true that the estate may include some property rights that would not otherwise belong to the debtor, such as a right to undo fraudulent transfers. It is also true that an estate may come under the control of somebody different from the debtor if a trustee is appointed. But there is nothing in the Bankruptcy Code itself that supports the notion that a transfer to a new legal entity takes place when an estate is created that remains under the control of a debtor-in-possession in a chapter 11 case.

It also appears from our own research that courts generally reject the contention that a bankruptcy filing itself constitutes a transfer of assets to a new entity. *See, e.g., Biltmore Associates LLC v. Twin City Fire Insurance Company*, 572 F.3d 663, 691 (9th Cir. 2009) (concluding that the pre-filing company and the company as debtor-in-possession in chapter 11 are the same entity for purposes of applying an insured-versus-insured exclusion); *U.S. Through*

5

*Agr. Stabilization And Conservation Service v. Gerth*, 991 F.2d 1428, 1436 (8th Cir. 1993) (holding that when a debtor-in-possession assumes an executory contract, the debtor and the debtor-in-possession are the same entity for purposes of mutuality under a section 553 setoff analysis); *In re Central Illinois Energy LLC*, 482 B.R. 772, 791 n. 18 (Bankr. C.D. Ill. 2012), *aff'd*, 497 B.R. 312 (C.D. Ill. 2013) (holding that "[b]ecause a debtor in possession is, in fact, the same person or entity as the debtor, entitled to deal with its assets and enforce its property and contract rights in its own name, there is no reasoned basis for most bankruptcy purposes to consider a filing to have effected a transfer to a new or different person or entity"); *In re James Cable Partners, L.P.,* 154 B.R. 813, 815-816 (M.D. Ga. 1993), *aff'd*, 27 F.3d 534 (11th Cir. 1994) (holding that the debtor in possession has contract rights upon the commencement of a bankruptcy case "without an assignment from the debtor," and thus "no real transfer occurs.")

I am aware of the decision by the bankruptcy court for the Northern District of Mississippi in *In re Mid-South Business Assocs., LLC*, 555 B.R. 565 (Bankr. N.D. Miss. 2016). In that case, the relevant operating agreement designated two managers and required that they act unanimously in order to bind the company. *Id*. at 574.  The operating agreement also provided that certain matters outside the ordinary course of business (including a sale, exchange or disposition of property) could only be undertaken upon the affirmative vote of members owning at least two-thirds of the interests in the company.  Two members later took over the actual management of the company, but without any official action by the members and without authority to do so under the terms of the operating agreement. *Id*. at 575.  Other members moved to dismiss a later bankruptcy filing.  The Mississippi court noted the many issues as to who had authority to act on behalf of *Mid-South*, but held that even if the persons who authorized the bankruptcy filing had been "managers" of the entity the operating agreement in that case did not

6

allow them to take any action outside the ordinary course of business, and therefore did not authorize them to file a bankruptcy petition. *Id*. at 577.  The court also held that the filing of a bankruptcy petition "transfers" all of a debtor's interests in property to the debtor's bankruptcy estate, and so the provision in the operating agreement that required a two-thirds affirmative vote by the members was applicable.

The court in *Mid-South* cited no other authorities in support of its "transfer" conclusion, and it did not discuss the Supreme Court's earlier decision in *Bildisco*.  The reasoning of the *Mid-South* decision was later questioned in *In re Catalyst Lifestyles Sport Resort LLC v. Sherrard*, No. 18-CV-302, 2019 U.S. DIST. LEXIS 86036 (N.D. Ind. May. 22, 2019).  In *Catalyst*, a bankruptcy court had dismissed a chapter 11 petition relying, at least in part, on the *Mid-South* decision.  On appeal, the district court noted that in ordinary usage the words "transfer" and "dispose" refer to irrevocable transactions.  In a chapter 11 filing, by contrast, certain property is deemed to be property of the estate, but what happens to it remains to be determined.  *Id.* at *16-17. Accordingly, the district court noted it "could certainly conclude that the court in *Mid-South* and the Bankruptcy Court below failed to apply the plain and ordinary meaning of 'dispose,' as is required under Indiana law." *Id.* at *16*.  However, the district court noted that the bankruptcy court had determined that the operating agreement itself barred a bankruptcy filing without other consents, and since that interpretation of the contract was not an abuse of discretion the district court declined to overturn the dismissal. *Id.* at *18-20.

The district court's reasoning in *Catalyst Lifestyles* certainly supports the view that a chapter 11 filing does not effect a "transfer" where a debtor remains as a debtor-in-possession.  As I have already described, that is the conclusion of the United States Supreme Court and of most of the authorities we have reviewed.  Perhaps the issue might differ in a chapter 7 filing

7

where a trustee necessarily is appointed. I think that conclusion could be subject to debate, but I need not decide that issue here.

Based on the language of the Bankruptcy Code, the Supreme Court's decision in *Bildisco*, and the many other authorities I have cited above, I hold that the contention that the mere filing of a chapter 11 petition and the creation of a chapter 11 estate automatically amounts to a transfer or a disposition of substantially all of the Debtor's property for purposes of other laws is simply wrong, particularly where the debtor continues as a debtor-in-possession and continues to exercise dominion and control over its businesses and properties.

I believe that Extreme Horse's contention is also wrong as a matter of North Carolina state law. The term "transfer" is defined in in the North Carolina statute as a "transfer of legal, equitable, or beneficial ownership by sale, exchange, assignment, gift, donation, grant, or other conveyance or disposition of any kind, . . . including transfer by operation of law." N.C. Gen. Stat § 57D-1-03(34). The cited words do not cover bankruptcy unless a bankruptcy constitutes a transfer by operation of law, and I have already decided that it does not.

The only reference in the "transfer" definition to whether a transfer occurs upon a bankruptcy filing is the statement that with respect to the ownership interest of an interest owner a transfer is deemed to occur be a transfer if there is "any appointment of a receiver, trustee, liquidator, custodian, or other similar official for that interest owner . . . under any law of bankruptcy or insolvency . . ." *Id.* I note that even in that instance, the mere filing of a bankruptcy case is not itself deemed to be a transfer; it is the appointment of a trustee, receiver, liquidator or custodian that is deemed to constitute the transfer. I also note that there is no separate provision that applies that particular meaning of the word "transfer" to anything other than the transfer of the ownership interest of an individual member.

8

I do not know of any North Carolina cases that have adopted the *Mid-South* view in general or that have interpreted the "transfer" provisions in the North Carolina statute as being applicable to a bankruptcy filing. I have reviewed the decision in *In re S&R Grandview LLC*, 13-03098-8, 2013 Bankr. LEXIS 4182 (Bankr. E.D.N.C. Oct. 4, 2013), that has been cited by Extreme Horse. The court in that case noted that the North Carolina statute requires consent by all members to a transfer or a sale of all or substantially all assets, but it did so in a completely different context, and that was not the ground on which the court found that a filing was unauthorized.

The operating agreement in the *S&R Grandview* case said that management was vested in the "members" and not in a manager. *Id.* at *2. One manager (Mr. Rhine) negotiated a deal for the transfer of the limited liability company's assets to a bank. *Id.* at *6-7. A state court issued a temporary restraining order against such a transfer without the consent of another objecting member. *Id.* at *7-8. In a later order, the state court enjoined Mr. Rhine from exercising any of the rights of a member of S&R Grandview unless and until a certain judgement was paid. *Id.* at *9.

Mr. Rhine then filed a bankruptcy petition purportedly on behalf of the LLC. The bankruptcy court held that Mr. Rhine did not have authority to do so. *Id.* at *10. The court noted that Mr. Rhine did not get the consent of other members for the bankruptcy filing, and noted that the state court had already held that Mr. Rhine lacked authority to act as manager. *Id.* at 10-11. As a result, the filing was dismissed. *Id.* at 11-12.

The "transfer" issue was relevant in *S&R Grandview* only as a description of the background to the state court orders that ultimately led to the injunction against Mr. Rhine

9

exercising membership rights. It was not the ground on which the bankruptcy filing was dismissed.

In addition to *S&R Grandview*, I have reviewed three other North Carolina bankruptcy court decisions that dealt with filings by limited liability companies. One was the *Cabernet Holdings* decision that I described above. I have also reviewed the decisions in *In re Springfield Homes LLC*, No. 13-04550-8, 2013 Bankr. LEXIS 4039 (Bankr. E.D.N.C. Sep. 27, 2013) and *In re Surf City Invs, LLC*, No. 11-01398-8, 2011 Bankr. LEXIS 1699 (Bankr. E.D.N.C. May. 6, 2011).

*Cabernet Holdings* involved two member managers, each of whom had a 50 percent interest. 2010 WL 2540116, at *2. *Springfield Homes* involved a manager-managed LLC, but it had two managers, each with 50 percent interest. 2013 Bankr. LEXIS 4039, at *3-4. *Surf City* involved an LLC with multiple managers, but the court held in that case that a bankruptcy filing had been ratified. 2011 Bankr. LEXIS 1699, at *8.

The North Carolina Bankruptcy Court cases that I reviewed focused on the general scope of the managers' authority in those particular cases, particularly as such authority might have been limited by the companies' operating agreements.. None of these decisions treated a bankruptcy filing as a disposition of property. None of them looked to the asset sale provisions of the operating agreements to determine whether managers could file bankruptcy petitions. Instead, they looked more generally to the provisions that specified who would make decisions on behalf of the limited liability companies.

The Northwest Company, LLC is a manager-managed LLC, not a member-managed LLC. Bankruptcy filings are not among the items for which the statute requires unanimous consent by all members. If that had been the legislative intent, the legislature could and would

10

have said so. I will not interpret the separate limit on sales or transfers of all assets as somehow also encompassing a chapter 11 bankruptcy filing, and I note that none of the North Carolina cases have done so.

Extreme Horse argues that even if the bankruptcy filing itself did not constitute a transfer, this particular bankruptcy filing should require the unanimous consent of the members because its alleged purpose is to complete a sale of assets. But the filing itself did not accomplish such a sale or transfer, and even if a sale is contemplated (or planned, or expected, or likely) it is not a foregone conclusion, and it is not an outcome that irrevocably follows from the bankruptcy filing itself. The issue before me is whether the filing was authorized. Whether the Debtor does or does not need unanimous consent in order to propose a sale is not an issue that is before me today.

The same is true as to Extreme Horse's argument that a dissolution would require unanimous member consent. It is not so clear to me that this is the case under North Carolina law, but it does not need to be decided now.

Extreme Horse has also argued at page 9 of its papers that even if action by a majority of managers was sufficient, there was still an absence of a majority in the number of members who approved the bankruptcy filing. I'm not sure I understand this argument. As I noted, this is a manager-managed LLC. I have no evidence or contention that there were any other managers of the LLC other than Mr. Auerbach.

The Debtor has argued that there was in fact an operating agreement pursuant to which the business has been operated and that its terms should be binding, apparently on the theory that the parties indicated their assent to the agreement by their conduct, even if not by their

11

signatures. I need not reach that potentially difficult factual question in light of my disposition of the legal issues.

The Debtor has also cited to operating agreements for other related entities, but I do not see how those are relevant to the issue before me this morning. The fact that people agreed to certain provisions in other agreements with respect to other entities is not itself evidence that they had an actual agreement with respect to the particular entity that is before me.

I find it is enough that the filing was made and authorized by Mr. Auerbach. The bankruptcy petition was signed by Mr. Auerbach. One of the attachments to the petition is an "Action by Written Consent of the Majority Members of The Northwest Company, LLC" that was purportedly executed pursuant to the operating agreement that may or may not have been effective. Despite its title, however, the document actually constitutes a consent to a bankruptcy filing by and among the majority members "and the manager" of The Northwest Company, LLC, and it is signed by Mr. Auerbach as manager. Even if Extreme Horse were correct, and even if there were no operating agreement in effect, the written consent was executed by the designated manager. Furthermore, Mr. Auerbach acted within his powers as manager when he signed the bankruptcy petition. It is also plain that Mr. Auerbach has ratified the petition, just as the petition was ratified in the *Surf City* case. I therefore find that the bankruptcy petition was duly authorized, that I have jurisdiction, and that there are no grounds for dismissal.

Dated: New York, New York
     May 1, 2020

                                                        <u>s/Michael E. Wiles</u>
                                                        HONORABLE MICHAEL E. WILES
                                                        UNITED STATES BANKRUPTCY JUDGE